ISIDOR WASSERVOGEL et al., as Trustees, Landlords, Appellants, *v.* HERMAN MEYEROWITZ, Tenant, Respondent.

ISIDOR WASSERVOGEL et al., as Trustees, Landlords, Appellants, *v.* LEON DORNBUSH, Tenant, Respondent.

ISIDOR WASSERVOGEL et al., as Trustees, Landlords, Appellants, *v.* DANNY SILVERMAN, Tenant, Respondent.

ISIDOR WASSERVOGEL et al., as Trustees, Landlords, Appellants, *v.* MAXWELL BECKER, Tenant, Respondent.

Argued October 4, 1949; decided December 29, 1949.

*Barnet Kaprow* and *Bertram A. Levine* for appellants.  I. The tenants are liable for the retroactive rent increases for the period commencing after the expiration date of their respective

leases, to wit, during the period of their statutory tenancies. II. The Federal Housing Expediter's exercise of the power to order retroactive rent increases may not be questioned and the statute and the regulations, pursuant to which the power was exercised, are constitutional. (*Woods* v. *Stone,* 333 U. S. 472; *Bowles* v. *Lake Lucerne Plaza,* 148 F. 2d 967, 326 U. S. 726; *Yakus* v. *United States,* 321 U. S. 414; *Schmoll, Inc.,* v. *Federal Reserve Bank,* 286 N. Y. 503; *Bowles* v. *Willingham,* 321 U. S. 503; *New York City Housing Authority* v. *Awant,* 183 Misc. 823; *Huber* v. *Ruby,* 187 Misc. 967; *Blaine* v. *Clark,* 188 Misc. 924; *Bowles* v. *Carothers,* 152 F. 2d 603; *Markbreiter* v. *Woods,* 163 F. 2d 993; *United States* v. *New York Central R. R. Co.,* 279 U. S. 73.) III. During the terms of the leases, the escalator clause bound the tenants to pay the higher rental retroactive to the date of " allowance " of the increases, to wit, the " effective " date noted in the orders of the rent control office. (*United States* v. *New York Central R. R. Co.,* 279 U. S. 73; *Kramshor Realty Corp.* v. *Basile,* 191 Misc. 584.)

*Leo Isacson, Benjamin Weinberger, Murray A. Gordon* and *Barney Rosenstein* for respondents. I. The courts of this State have jurisdiction to inquire into the validity of the regulations here in issue and the order issued pursuant thereto. (*Woods* v. *Stone,* 333 U. S. 472; *Yakus* v. *United States,* 321 U. S. 414; *Bowles* v. *Lake Lucerne Plaza,* 148 F. 2d 967, 326 U. S. 726; *Lockerty* v. *Phillips,* 319 U. S. 182; *Regan* v. *Kroger Grocery & Baking Co.,* 386 Ill. 284.) II. The regulation of the Housing Expediter providing for a retroactive rent increase without notice to the tenant is invalid. (*Matter of Lyons* v. *Goldstein,* 290 N. Y. 19; *Matter of Citron* v. *O'Shea,* 244 App. Div. 158; *Morgan* v. *United States,* 304 U. S. 1; *Market St. Ry. Co.* v. *Railroad Comm. of State of California,* 324 U. S. 548; *Paulsen* v. *City of Portland,* 149 U. S. 30; *Toombs* v. *Citizens Bank of Waynesboro,* 281 U. S. 643; *Chew Hoy Quong* v. *White,* 249 F. 869.) III. The landlord is precluded by the escalator clauses in the leases from recovering retroactive rent arrears. (*455 Seventh Ave., Inc.,* v. *Hussey Realty Corp.,* 295 N. Y. 166.)

DESMOND, J. These are four summary proceedings commenced in the Municipal Court, New York City, in each instance to evict a tenant for alleged nonpayment of rent. In each case,

the sole question was, and is, as to the right of landlords-appellants to collect from the tenant-respondent, retroactive rent increases allowed by orders of the office of the Federal Office of Rent Control. Those orders were made in April, 1948, but granted increases, effective as of September 29, 1947, which was the date on which the landlords had filed their "hardship applications" for higher rents. At the time of the landlords' applications to the Federal rent officials, all four tenants were occupying their respective apartments under unexpired written leases, but before the date of the orders increasing the maximum rents allowable, all four leases had expired by their terms, and none of them had been renewed, so that, when the Federal orders came through, all four respondents were statutory tenants. The landlords demanded payment at the increased rents: prospectively, to which tenants agreed, and also retroactively back to the application dates, as the orders provided. Each tenant, however, denied any obligation to make good the added amounts of rent for the period elapsed from the application date to the order date.

The grounds of the tenants' objections, in this court, to the retroactivity of the orders are, principally, these:

1. That an "escalator" provision in each lease forbade the imposition of increased rents for any period prior to the first day of the month following the making of the rent increase order.

2. That the Federal regulation, effective January 30, 1948, authorizing increases back-dated to the time of a landlord's petition, was invalid because it did not require notice to the tenant of such application, also that the rent increase orders here contested were void, insofar as retroactive, because no formal notice of application therefor was ever given to any of the tenants.

The position of landlords-appellants may be put thus:

1. That the lease provision referred to in No. 1 above had, by its very terms, no application to the period here involved.

2. That the retroactive application of the Federal rent increase order was valid, as far back as the expiration dates of the respective leases which fixed the rents to those dates, and that no law or rule required notice to the tenants of these "hardship applications" made by landlords.

3. That, in any event, the exercise by the Federal Housing Expediter of his statutory power to increase rent may not be questioned in any State court.

In other words, the landlords say that the increase is collectible back to the dates when the respective leases expired, while the tenants say that it is collectible only as of, and from, the date when the housing office authorized it. The Appellate Division majority held that " any law or regulation, under which a claim is made for a retroactive rent increase, must require that the tenant shall have had notice of the pendency of the landlord's application for an increase." (275 App. Div. 387, 389.) Accordingly, held the Appellate Division, the increases were valid only prospectively from the date of the orders, despite their language to the contrary. The dissenting Justices in the Appellate Division were of the opinion that, since the power to back-date had been specifically granted to the Federal Expediter, the State courts could not question the propriety of the exercise of that power, and that, accordingly, the increases were collectible in these proceedings, starting in each case from the expiration date in the respective lease, but not so collectible further back to the date of the landlord's application, since, of course, the lease-fixed rental controlled until expiration. We agree with the Appellate Division minority.

We take up first the so-called "escalator clause " found in each of these leases, reading as follows: " The rent herein provided for is the maximum rent which the Landlord may collect under the O.P.A. [Office of Price Administration] rent regulations in force at the time of the execution of this lease. In the event that at any time during the term of this lease, or any renewal or extension thereof, such regulations against collecting higher rents are cancelled or modified, or if the O.P.A. grants an increase of the rental of the demised premises, the tenant will pay a rental of $........ per month or as much thereof as is legally permissible or allowed, commencing the first day of the calendar month following the cancellation or modification of such regulation, or the allowance of an increase of the rental of the demised premises, as the case may be."

The Appellate Term, when it considered these proceedings, thought that the clause just above quoted, forbade any increase

except for periods following the date of the making of the Federal order. We do not agree. The leases, made during Federal O.P.A. rent control, fixed rentals at ceiling figures, and provided that, if any upward change should be authorized, during the term or renewal or extension of the term, the higher amount would then be written into the lease, as of the first day of the following month. The leases of all these tenants expired, and no lease was in any way extended or renewed. The tenants then stayed in possession, not under the original lease but as statutory tenants only. As such, each tenant-respondent was in the landlord's property " not by virtue of any agreement, express or implied, either as to duration of term or amount of rent, but by virtue of the compulsion which the law exerts on the landlord to allow him to remain " (*Stern* v. *Equitable Trust Co.*, 238 N. Y. 267, 269-270). Nor was this " escalator clause " carried over into the statutory tenancy. The parties here, making their leases during a period of rent control, specifically restricted the clause's operation to the term of the lease, or any renewal or extension thereof, omitting any reference to a possible subsequent statutory tenancy. The law reads some terms of an express lease into a later statutory tenancy, so as to work out a complete relationship (*Stern* v. *Equitable Trust Co., supra*) but it never so carries over, into a statutory tenancy, lease provisions which the parties themselves, in plain words, have agreed should be effective only during the running of the original lease (see *Rabinovitz* v. *Williamson*, 275 App. Div. 841, motion for leave to appeal denied 299 N. Y. 800). If these parties had wished their " escalator clauses " to survive beyond the leases themselves, and to run into the statutory tenancy, they could have said so (see *Matter of Moore* [*Chira*], 275 App. Div. 956, motion for leave to appeal denied 300 N. Y. 762). We conclude that the " escalator clause " has no effect here except to prevent any increase from reaching back beyond the lease expiration dates.

No formal or official notice was given, to any tenant, of the landlord's application to the Federal rent office for permission to charge higher rent. (In one case the landlord did write a letter to the tenant, two or three weeks after filing the application, which letter notified that the petition had gone in, and there is some showing here that similar letters went to the

other three tenants, but we treat the cases, as did the Appellate Division, as if no notice at all were given.)  The tenants argue that any regulation, or any order, raising rents retroactively without giving the tenants such notice as would give them an opportunity to move out before the effective dates of the increases deprives the tenants, unconstitutionally, of due process.  Though we realize the hardship as to tenants, of dating increases back several months, we are unable to see anything unconstitutional in such a practice, which was, concededly, permitted by express Federal regulations.  A statutory tenant holds over not because he has any property right or estate in the premises, but because emergency laws forbid his eviction.  Fixation of the maximum amount to be paid by him as rent during such emergency occupation is not a judicial but a legislative act, the actual computation thereof being validly delegated by Congress to an administrative agency (*Bowles* v. *Willingham,* 321 U. S. 503, 512).  Among the administrative regulations is this one authorizing the housing administrators, when a petition for increase is not granted till long after filing, to allow an increase as of the filing date, that is, the date as to which the new maximum rent is determined.  As pointed out in *Bowles* v. *Willingham* (*supra,* p. 519), Congress itself could have fixed emergency rentals without any hearing and without notice to landlord or tenant, and " Congress need not make that requirement when it delegates the task to an administrative agency " (see, also, *Matter of Beekman* v. *Ross,* 298 N. Y. 891).  It may be that, as to a landlord forced to keep a tenant, due process requires that he have a court review of any claim he may make that a reduction of rent, or refusal to allow an increase, is confiscatory (see *Yakus* v. *United States,* 321 U. S. 414, 431 *et seq.; Bowles* v. *Willingham, supra,* pp. 519–521).  But no property or vested right of the statutory tenant is taken when his rent is raised.  A tenant under a lease may, when that express lease ends, move or stay.  If he stays, he is exercising a privilege granted him by law, and with the benefits thereof he must bear the burdens, including that created by the danger that government may allow his landlord to charge a higher rental, and that retroactively.  Perhaps the law should, in fairness, have given the tenant even more protection by requir-

ing formal advance notice to him that a rent raise is in prospect, and that it may be retroactive to the date of the notice. But there was then no such requirement in Constitution, statute or regulation, and we cannot supply one.

Appellants say that, regardless of the answer to the question just discussed, the courts of this State cannot review the Expediter's order here. If appellants are right as to that, we should not, technically speaking, have addressed ourselves herein to the tenants' attack on the orders. However, so that our views now may be available as to all the questions variously answered in the opinions below, we are expressing those views, even though we conclude, as we do, that the Municipal Court, when shown the Federal Expediter's determination, was bound to accept and act upon it, and could not review or overrule it for supposed invalidity. In *Matter of Schmoll, Inc.,* v. *Federal Reserve Bank* (286 N. Y. 503, 509) we said that no State court may " control the manner in which a federal agency performs or attempts to perform its functions and duties under the Tariff Act or other federal statute where the Federal government has exclusive jurisdiction." The attempt by the State courts, in the cases before us, to hold invalid this Federal administrative order, is nothing less than an assertion of control of the manner in which the Federal rent office performed the function assigned to it by Congress. The *Schmoll* opinion (*supra,* pp. 508–509) was careful to uphold the power of a State court " acting within the field of its allotted jurisdiction, to enforce rights created by federal statute and to remedy wrongs committed by federal officers under color of authority granted by federal statutes." But the attempt here to set aside these rent increase determinations cannot be fitted into either of those situations, stated in the *Schmoll* opinion as being appropriate for State court adjudication. Respondents say that in the *Schmoll* case there were available other Federal review procedures, but that this rent increase must be contested in the State courts, or not at all, since Congress omitted from the 1947 and 1948 Housing and Rent Acts (U. S. Code, tit. 50, Appendix, § 1881 *et seq.*) the provision found in the 1942 O.P.A. law (U. S. Code, tit. 50, Appendix, § 924; see *Woods* v. *Stone,* 333 U. S. 472, 474) which had conferred on the Federal Emergency Court of Appeals and on the United States Supreme

134

Court, exclusive jurisdiction to determine the validity of rent regulations. The deletion of that exclusive jurisdiction provision from the Federal Housing and Rent Act left the law where it had been before the provision was enacted, and conferred no jurisdiction on any court. And the law of this State, under the *Schmoll* case and its predecessors, is and was that our State courts have no jurisdiction to review Federal administration orders. Therefore, it does not help respondents to point out that in *Lockerty* v. *Phillips* (319 U. S. 182, 187), the Supreme Court had remarked, in discussing this " Emergency Court of Appeals " enactment, that Congress need not have set up such a court or any other inferior Federal court, but could have left suitors " to the remedies afforded by state courts ". The courts of this State have never afforded, and do not now afford, any such remedies, whatever the result may be as to preventing suitors from reviewing the acts of Federal officers or agencies. Perhaps they may bring original suits in the Federal District Courts (see Friedlander and Curreri, Rent Control, p. 131), but the point is not ours to decide.

And not only have our courts, under our own decisions, no power to revise or invalidate this Federal determination, but we are, by the supremacy clause (art. VI) of the Federal Constitution, put under a positive duty to enforce it, in these appropriate proceedings (*Testa* v. *Katt,* 330 U. S. 386).

Some argument has been made that the acceptance by these landlords, while their petitions for higher rents were pending, of the lease rentals estopped them, or amounted to a waiver by them. Since they were, during that pendency of those petitions, forbidden to accept more than the rents theretofore fixed, there is no basis for charging them with either waiver or estoppel.

We conclude that these rent increases became effective on the respective dates of expiration of the four leases, that is: as to respondent Meyerowitz on November 1, 1947, as to respondent Dornbush on April 1, 1948, as to respondent Silverman on April 1, 1948, and as to respondent Becker on December 1, 1947.

The orders should be modified in accordance with the opinion herein, and as so modified, affirmed, without costs.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DYE and BROMLEY, JJ., concur; FULD, J., taking no part.

Ordered accordingly.