JOSEPH H. HUNT, Landlord, Appellant, *v.* H. FARRELL GILMORE, Occupant, Respondent.

Supreme Court, Appellate Term, First Department, April 20, 1950.

*Benjamin Gollay* for appellant.

*William V. Homans* and *Arthur J. Homans* for respondent.

*Nathan W. Math, Julius Raffelson, Joseph Jay* and *Alfred Weinstein* for Temporary City Housing Rent Commission, *amicus curiæ.*

Hammer, J. The landlord appeals from a final order in favor of the occupant entered in the Municipal Court, Borough of Manhattan, ninth district, after trial before the court without a jury.

The appellant-landlord brought this proceeding to recover possession of the premises herein on the ground that the occupant is an intruder (Civ. Prac. Act, § 1411, subd. 4). At the trial it was agreed that if the court found the occupant an intruder, the holdover proceeding was proper and that there was no necessity for obtaining a certificate of eviction from either the temporary city housing rent commission (Administrative Code of City of New York, § U41–7.0) or the Office of Housing Expediter. The court held that the occupant secured possession lawfully and accordingly dismissed the petition.

One John Santo had entered into a written lease with the landlord-appellant whereby Santo rented apartment 3-B for residential purposes. The lease was for the period January 1, 1945, to December 31, 1945. After the expiration of the lease, Santo continued in occupancy as a statutory tenant.

Some time in the month of June, 1949, Santo left the United States. Prior to his departure he turned his apartment over to the respondent herein, the latter paying Santo two thirds of the June rent which the statutory tenant had previously paid. The respondent also paid $500 to Santo for the furniture in the apartment. About the first of July, the appellant received a bank cashier's check for the rental of the Santo apartment. This check, not signed or indorsed by Santo, but not showing

it came from any other person claiming a right of occupancy of Santo's apartment, was enclosed in an envelope which had Santo's name typed thereon. Unknown to the landlord, this check was actually sent by respondent. The rental in the past had been paid by means of Santo's personal checks. The appellant landlord subsequently learned of the respondent's occupancy of the premises and then served a notice on August 8, 1949, requesting that he vacate.

The primary purpose of the emergency rent control laws was to protect tenants in their occupancy and against the extortion of unjust and unreasonable rents. Upon the expiration of the term created by agreement, the continuance of the tenant's occupancy was by virtue of the emergency statute and not pursuant to the agreement of the parties. Neither landlord nor tenant obtained rights except those given by the statute. However, unless in contravention of the statute or a provision thereof, the obligations were those of the lease. As the tenant was by the agreement obligated to surrender possession to the landlord and his occupancy was that only which was continued by the statute upon the condition therein prescribed, that he pay the rent to which the landlord was entitled, it appears obvious that the statute gave him no right to confer any privilege of occupancy upon a stranger by assignment. The sale of the tenant's furniture in the demised apartment to such a stranger who was thus enabled to enter into and occupy the apartment for several days in June with the intention (shown by the acts of the participants) of keeping him in occupancy after June, is clearly a subterfuge and evasion both of the letter and purpose of the statute.

The New York City local law (Administrative Code of City of New York, § U41-7.0, subd. d) provides that "Prior to the institution of any summary proceedings or any other action or proceeding to evict a tenant or to recover possession of an apartment, except for non-payment of rent, the person instituting such action or proceeding shall file * * * a verified application for a certificate of eviction." The section has to do with the protection of tenants in apartments from eviction and the relationship of landlord and tenant under the definition of these words therein. Nowhere is there provision or definition which brings an intruder or squatter within the terms of the local law or requires a certificate for the eviction of anyone other than " A tenant, subtenant, lessee, sublessee, or other person entitled to the possession or to the use or occupancy of any apartment " as defined. (Administrative Code, § U41-7.0, subd. b, par. 5.)

Emergency statutes limit the applicability of provisions of law enacted and of decisions rendered for normal times. Such decisions stating excellent law for normal times may be, in many instances, inapplicable to the conditions coming within the purview of the emergency statutes. The emergency rent control statutes limit the exercise of normal remedies by landlords and owners during the emergency but do not enlarge tenants' rights or privileges beyond the necessities required to alleviate or remedy emergency evils. A landlord owner in normal times has the right to evict a tenant and any other claiming under him holding over against the will of the landlord. That right is limited during the emergency under the provisions of the statute and the tenant is continued in occupancy. No evil of the emergency would be cured or alleviated if a tenant kept in possession against the will of the landlord and about to remove were permitted or authorized against such will to substitute a stranger in his place as tenant or occupant. The emergency statutes were designed to protect the tenant's occupancy. When the tenant's occupancy ends, the landlord is entitled to repossession. Beyond that, were the landlord or owner kept out of possession of his estate and a stranger permitted to intrude, there would ensue such encroachment upon property rights as would challenge the protection to such rights guaranteed by the Constitution.

In the circumstances, we find the occupant to be an intruder. (*Birdie Management Corp.* v. *Dunton,* 60 N. Y. S. 2d 673; *Greif Realty Corp.* v. *Moroff,* 82 N. Y. S. 2d 396, 397; *O'Donnell* v. *McIntyre,* 41 Hun 100.)

Federal regulations take a sound view of the occupancy sought to be upheld by the respondent. Under Federal controls those situated as is respondent herein are placed in the category of those for whose eviction no certificate is required. In the same class are those committing a nuisance or guilty of an illegal or immoral use. (Housing and Rent Act of 1947, as amd., U. S. Code, tit. 50, Appendix, § 1881, *et seq.*; Federal Controlled Housing Rent Regulation, § 825.26, subd. [a]; Release of Office of Housing Expediter, C-13, April 3, 1949.) The circumstances by which the occupancy was here taken, and the use made thereof, furnish overwhelming evidence of an unlawful intrusion and it follows that there is no requirement of the emergency legislation or regulations for securing a certificate of eviction. The requirement of the Federal regulation is that the landlord give written notice, stating the grounds upon which the eviction is based and the time when the occupant is obliged to vacate, and

serve a copy of such notice with the area rent office. (Federal Controlled Housing Rent Regulation, § 825.26, subd. [a], Release of Office of Housing Expediter, *supra.*)

Having pre-empted the field of rent control, any seeming conflict existing between the eviction provisions of the Federal statute and those of the local law must be resolved in favor of the Federal statute under the familiar doctrine that a prohibition of a Federal statute may not be set at naught, or its benefits denied, by State statute or local law. The Court of Appeals in *F. T. B. Realty Corp.* v. *Goodman* (300 N. Y. 140, 148) a cause, like the present, to recover possession of real property under article 83 of the Civil Practice Act, stated that such conflict between a local law and the laws of the State rendered the local law unconstitutional and void. It was held that '' The local law is, therefore, inconsistent with article 83 of the Civil Practice Act and in that respect runs foul of the limitation laid down by the above words of the Home Rule Amendment of the State Constitution.'' The question of the invalidity of the eviction provisions of the local law with respect to the Federal Housing and Rent Act of 1947, as amended, was urged by the Housing Expediter appearing *amicus curiæ* but in regard thereto the Court of Appeals said (p. 148) '' we express no opinion as to other constitutional questions that have here been argued.''

The action of the State Legislature in enacting a statute validating all provisions of the local laws of the City of New York relating to evictions and maximum rents (L. 1950, ch. 1), cannot give force to a provision of a local law which is in conflict with the Federal statute controlling rents. The eviction provisions of the local law must yield to the Federal statute — the supreme law of the land. (*Sola Electric Co.* v. *Jefferson Electric Co.,* 317 U. S. 173, 176; *Case* v. *Bowles,* 327 U. S. 92, 102; *Testa* v. *Katt,* 330 U. S. 386, 393; *Fleming* v. *Rhodes,* 331 U. S. 100, 107; *Wasservogel* v. *Meyerowitz,* 300 N. Y. 125, 134.) In the case last cited the Court of Appeals held: '' And not only have our courts, under our own decisions, no power to revise or invalidate this Federal determination, but we are, by the supremacy clause (art. VI) of the Federal Constitution, put under a positive duty to enforce it, in these appropriate proceedings.'' The supremacy of the Federal provisions renders nugatory any conflicting requirments of the local statute.

The final order should be reversed, with $30 costs, and final order directed for the landlord, with costs.

Hofstadter and Pecora, JJ., concur.

Final order reversed, etc.