In the Matter of ANTHONY SERVEDIO, Petitioner, against CHARLES ABRAMS, as State Rent Administrator, Respondent.

Supreme Court, Special Term, Bronx County, May 3, 1955.

*Michael A. Del Greco* for petitioner.

*Hortense W. Gabel* and *John V. Browne* for respondent.

MATTHEW M. LEVY, J.   This is an article 78 proceeding brought by a landlord to review the determination of the State Rent Administrator, who increased the rent of an apartment in certain premises on the landlord's petition, but to an amount less than requested by the landlord.   The monthly rent applied for before the Administrator was $55.15.   The rent allowed by him was $50.15.   The order sought to be reviewed was issued pursuant to section 33 of the State Rent and Eviction Regulations, which allows the landlord to apply for an increase of the maximum rent, otherwise warranted, on one or more of the following grounds:   *" 1. Increased service or facilities, substantial rehabilitation, major capital or other improvements.* The Administrator may grant an appropriate adjustment of a maximum rent where he finds that:   a. the landlord and tenant by mutual voluntary written agreement, subject to the approval of the Administrator, agree to a substantial increase in dwelling space or an increase in the services, furniture, furnishings or equipment provided in the housing accommodations;   *   *   * or b. there has been since March 1, 1950 an increase in the rental value of the housing accommodations as a result of a substantial rehabilitation of the building or housing accommodations therein which materially adds to the value of the property or appreciably prolongs its life, excluding ordinary repairs, maintenance and replacements; or c. there has been since March 1, 1950 a major capital improvement required for the operation, preserva-

tion or maintenance of the structure; or   \*  \*  \*   [irrelevant clauses omitted]."

According to the registration statement filed many years ago by the petitioner's predecessor in title with the United States Office of Price Administration (O. P. A.), a rent of $30 per month was collected for the apartment on March 1, 1943, the Federal freeze date. The rent thus recorded was later claimed to have been comparatively low — by reason of the fact that the then tenant was a relative of the then landlord and performed janitorial services in the dwelling — and on September 27, 1945, by order of the O. P. A. issued under paragraph (4) of sub-division (a) of section 5 of the Federal Rent Regulations, the rent was increased to $41 a month, the level of rents of comparable apartments. On October 21, 1954, the present landlord filed with the New York State Rent Administrator a report of lease and application for increase of maximum rent. The rent thus specified in the lease (for which approval was sought from the Administrator) was $55.15 per month, computed by effectuating a 15% lease-increase of rent from $41 to $47.15, plus $8 per month for additional equipment. However, after inspection and a finding that some used rather than new equipment had been placed in the apartment, the Administrator allowed $3 instead of the $8 requested for the additional equipment. Accordingly the rent was fixed by the respondent at $50.15 per month instead of the $55.15 requested by petitioner. In this proceeding the landlord makes no point of the non-allowance of the full amount requested for the equipment, but claims that nevertheless the rent should have been set at $62.51 a month, instead of $55.15. The petitioner's present computation is based upon the contention that the rent on the freeze date (March 1, 1943) should be considered to be $45 (upon the ground that this was then the comparable rent); that he is entitled to 15% of that sum ($6.75) under the so-called equalization adjustment formula (making $51.75); that he is entitled to another 15% on that total because of the lease (bringing the rent up to $59.51); and that he allows himself $3 granted for the improvements. He thus makes the total rent demanded $62.51.

The equalization adjustment statute relied upon by the petitioner provides in its pertinent clauses that "Notwithstanding the foregoing provisions of this section, on and after May first, nineteen hundred fifty-three, the maximum rent for any housing accommodation shall not be less than the maximum rent in effect on March first, nineteen hundred forty-three (or if there was no such maximum rent then in effect, the maximum rent

first established pursuant to the federal act prior to July first, nineteen hundred forty-seven) plus fifteen per centum thereof as such sum is adjusted to reflect: * * * (2) the amount of increases in maximum rent authorized by order because of increases in dwelling space, services, furniture, furnishings or equipment, or major capital improvements.'' (State Residential Rent Law, § 4, subd. 3-a, as added by L. 1953, ch. 321.) The petitioner also relies upon section 23 of the State Rent and Eviction Regulations which refers to '' *Maximum rents for housing accommodations, including equalization adjustment effective May 1, 1953.*'', and which reads as follows: '' Notwithstanding the provisions of Sections 21 and 22 of these Regulations, on and after May 1, 1953, the maximum rent for any housing accommodation shall be not less than the maximum rent in effect on March 1, 1943, pursuant to the Federal Act but, if no such rent for a housing accommodation was in effect on March 1, 1943, then the maximum rent shall be the maximum rent first established pursuant to the Federal Act prior to July 1, 1947, plus 15 percent thereof as such sum is adjusted to reflect: * * * [inapplicable] (b) the amount of any increases in maximum rent authorized because of increases in dwelling space, services, furniture, furnishings or equipment or because of major capital improvements. Nothing contained in this section, however, shall have the effect of increasing the maximum rent of any housing accommodation more than 15 percent above the maximum rent in effect on April 30, 1953.''

The respondent's position is that neither the State statute as to equalization adjustment (§ 4, subd. 3-a) nor the State regulation (§ 23) is applicable where the maximum rent was increased under Federal rent control on grounds other than increased services. The respondent maintains further that the equalization adjustment provision is not helpful to the petitioner in that he is not entitled to any further increase — since the rent on the Federal freeze date of March 1, 1943, was $30; and 15% of $30 (or an equalization adjustment of $4.50) was offset by the non-service increase of $11 (from $30 to $41) allowed by the Federal order of September 27, 1945; and consequently the landlord gets nothing by operation of the equalization adjustment formula. The petitioner urges, on the other hand, that the action of the O.P.A. in fixing the rent at $41 was not an *increase,* but simply a *registration* of the apartment at the rent at which it should have been recorded if there had not existed a special relationship between the then landlord and the then tenant — thus asking this court to engage in a sort of

*nunc pro tunc* procedure long after the abolition of the Federal administrative tribunal which issued the order.

The difficulty with the petitioner's contention is that he seeks to go behind and overcome the express basis of the Federal order. That order was issued not to establish a registration or to correct one retroactive to the freeze date, but specifically on the basis of paragraph (4) of subdivision (a) of section 5 of the then Federal Rent Regulations. That section, in its relevant clauses, provided for certain "*Adjustments and other determinations.*" as follows: "(a) *Grounds for increase of maximum rent.* Any landlord may file a petition for adjustment *to increase the maximum rent* otherwise allowable, only on the grounds that: \* \* \* (4) *Special relationship between landlord and tenant.* The rent on the date determining the maximum rent was materially affected by the blood, personal or other special relationship between the landlord and the tenant and as a result was substantially lower than the rent generally prevailing in the Defense Rental Area for comparable housing accommodations on the maximum rent date [March 1, 1943]: *Provided,* That no adjustment under this subparagraph *increasing the maximum rent* shall be made effective with respect to any accommodations regularly rented to employees of the landlord while the accommodations are rented to an employee, and no petition for such an adjustment will be entertained until the accommodations have been or are about to be rented to one other than an employee." (Emphasis added.) The O.P.A. order issued thereunder reads in part that: "The Rent Director has considered your [the then landlord's] petition and after due investigation of the matter finds that the facts in this case warrant an adjustment of the Maximum Rent for the above-described accommodations under Section(s) 5(a)(4) of the Regulation. Therefore, on the basis of the rent which the Rent Director finds was generally prevailing in this Defense-Rental Area for comparable accommodations on the Maximum Rent Date, it is ordered that the Maximum Rent for the above-described accommodations be, and it hereby is, changed from $30.00 per month to $41.00 per month."

The O.P.A. order as made is conclusive and binding, and neither the petitioner nor the State Rent Commission may go behind it (cf. *Matter of Proche* v. *McGoldrick,* 283 App. Div. 728, affd. 307 N. Y. 760, and *Wasservogel* v. *Meyerowitz,* 300 N. Y. 125). The order is conclusive on the question of what the maximum rent was prior to being increased by that order. Accordingly, I hold that the State Rent Administrator's deter-

mination fixing the rental at $50.15 per month finds adequate warrant in the record and has reasonable basis in law. It does not appear that the respondent has acted arbitrarily, capriciously or unreasonably. Under such circumstances, the court cannot interfere (*Matter of Mounting & Finishing Co.* v. *McGoldrick*, 294 N. Y. 104, 108; *Matter of Motta* v. *Temporary State Housing Rent Comm.*, 202 Misc. 341, 344–345). Order signed, denying the application.