Guy Gilbert Ribaudo, J.
By this nonpayment summary proceeding, the landlord seeks a final order adjudging that the *230 tenant is in arrears of “ additional rent ” of $6,480 with interest from July 11,1960. The tenant in turn has claimed over against the third-party subtenant as to any liability adjudged against the tenant for these alleged rent arrears.
The leased premises are the three upper stories of the four-story building at 23 Chatham Square, to be used for offices and lodging house purposes. The tenant occupied the second floor for his own dental offices and subleased the third and fourth floors to the subtenant herein for lodging house purposes.
The tenant has been the lessee of the premises since 1923. His last lease was for the three-year period commencing October 1, 1955 and expiring on September 30, 1958. This major lease was a renewal of prior leases and in accordance with the Emergency Commercial Space Rent Control Law (L. 1945, ch. 3, as amd.), established a maximum rent by agreement annexed to the lease. The monthly rent so payable by the tenant was $112.50 during the first two years and $125 during the last year together with $3 for water meter charges.
The subtenant, having been in possession for almost 40 years, had a lease commencing October 1, 1955 and expiring on September 30,1957. This sublease provided for a monthly rental of $40.
Upon the expiration of these respective leases, the tenant and the subtenant remained in possession as statutory tenants.
The expired major lease between the landlord and the tenant contained the usual provision requiring the tenant to comply with all laws, orders and regulations. of municipal authorities and with any direction of any public officer which imposes any duty upon the landlord or the tenant with respect to the demised premises or the use or occupation thereof. The lease further provided that if the tenant should fail to observe or perform any covenant on the tenant’s part to be observed or performed by virtue of the terms of the lease, the landlord may perform the same and make the necessary expenditures, and thereupon such expenditures shall be deemed to be additional rent payable by the tenant.
On November 9, 1959, a notice of violation was filed by the Department of Buildings under section D26-3.10 of the Administrative Code (see Local Laws, 1957, No. 79 of City of New York) in that no central heating and hot-water system was provided in the portion of the premises used for lodging house purposes.
On December 28, 1959 the landlord in writing notified the tenant to comply with the notice of violations, that plans be filed and an appropriate system installed to provide for central *231 heating and hot water. This letter further informed the tenant that if he failed so to do the landlord would take steps at the tenant’s expense to correct the conditions which caused the violations to be put against the building. The tenant failed to proceed with the work called for under the violations notice; in due course this work was done by an outside contractor hired by the landlord at a cost of $6,480. The landlord demanded this sum of the tenant as “ additional rent ” and upon the tenant’s failure to pay the same instituted this nonpayment proceeding.
By third-party complaint the tenant herein has impleaded the subtenant who in the occupation of her premises as a lodging house created the condition toward which the violations were directed. The sublease also provided that the tenants shall comply with the orders and regulations of the municipal departments ; and further specifically provided that the obligations of Dr. Denner under the major lease are incorporated by reference in the sublease and that the subtenant will in a like manner be so obligated.
At the request of the parties a determination of this proceeding was withheld until the Temporary State Housing Commission determined whether the subject premises and the tenancies between the parties were subject to the Emergency Housing Bent Control Law. The Bent Commission has now determined that it has no jurisdiction over the matters involved in this proceeding.
The landlord argues that the terms of the expired lease were automatically projected into the statutory tenancy. Hence, Dr. Denner, as the statutory tenant, was obligated under the provisions of the major lease to perform the work necessary to remove the violations and the landlord after due notice having elected to do the work at a cost of $6,480 may recover the same as “ additional rent ” in this proceeding.
Numerous, indeed, are the cases which hold that under these clauses to comply with orders of governmental authorities the obligation of a tenant to make and pay for structural changes is in contract and depends upon a determination of the intention of the parties as manifested by the lease provisions and the surrounding circumstances. (Herald Square Realty Co. v. Saks & Co., 215 N. Y. 427; Holden v. O’Brien, 240 N. Y. 560; Sullivan v. New York United Realty Co., 250 App. Div. 286.) Obviously none of the parties at the time of the execution of the leases contemplated a situation where substantial improvements had to be made at considerable expense, but nevertheless, the court is obliged to determine what the intention of the parties was with respect to this unforeseen contingency.
*232 However, the task of the court here is further complicated by the previously undecided question as to whether these covenants, assuming that they bound the tenant, are projected into the statutory tenancy. If the court should find that under the lease terms, the tenant had no obligation to make the improvements necessary to remove the violations, that would dispose of this proceeding. On the other hand, even if the court should find that under the lease terms, the tenant would have been obliged to make the necessary improvements if such violations were put on during the lease term, the court must still determine whether those covenants were projected into the statutory tenancy so as to impose upon the tenant, and in turn upon the subtenant, the obligation to reimburse the landlord for $6,480.
Although courts have frequently by rote set out the rule that all the terms of an expired lease are projected into the statutory tenancy except duration of the term and the amount of rent, the decisional law strongly indicates that by constant repetition, the true concept of the obligations of the tenant under a statutory tenancy has been lost sight of. The early Court of Appeals ease in no way established the sweeping omnibus character of this alleged rule.
Stern v. Equitable Trust Co. (238 N. Y. 267 [1924]) sets out with abundant clarity the true nature of a tenancy preserved by the emergency rent laws. Such a tenancy is not one resting in contract, express or implied. The rule of holdover tenancies does not apply under the emergency rent laws because ‘ ‘ By suspending possessory remedies under the lease, these laws extended, against the will of the landlord, the right of the tenant to remain in possession of the leased premises. * * * The tenant thus remains in possession, not by virtue of any agreement, express or implied, either as to duration of term or amount of rent, but by virtue of the compulsion which the law exerts on the landlord to allow him to remain ” (pp. 269-270).
Nevertheless the landlord here urges the court to imply in this statutory tenancy, a contract obligation upon the part of the tenant to pay as ‘ ‘ additional rent ” the heavy cost for installing this central heating and hot-water sytem. An overwhelming onerous burden when the annual rent to the major tenant is but $1,350 to $1,500 and the annual rent to the subtenant for the lodging house portion of the premises but $480.
Focused in the light of the true relationship arising out of a statutory tenancy, the court cannot perceive or discern an intention here to have these statutory tenants make and pay for the installation of the central heating and hot-water system. ‘ ‘ The tenant does not by remaining in possession tender an option to *233 the landlord to put him out as a trespasser; neither does he tender an option to allow him to remain as a tenant for any renewed or definite term. The tenant does not offer to remain in possession of the premises. He insists upon doing so. The landlord does not accept his proposition. The law forces it upon him. The tenant does not offer any proposition to the landlord upon which the conventional relation of landlord and tenant, as to length of term and amount of rent, based on offer and acceptance, can be inferred. To this extent the landlord is optionless and the tenant stands on his statutory rights which become the measure of his term and of his liability ” (Stern v. Equitable Trust Co. (p. 270).
In Whitmarsh v. Farnell (298 N. Y. 336) and in Wasservogel v. Meyerowitz (300 N. Y. 125) the Court of Appeals reaffirmed under the present emergency rent laws, the plain fact that the continued occupancy by a tenant after his lease had expired was not 11 under any agreement express or implied but by virtue of a compulsion exerted on the landlord * * # which allowed him [tenant] to remain in possession.” (Whitmarsh v. Farnell, supra, p. 343.)
Wasservogel v. Meyerowitz (supra, p. 131) points up the fallacy inherent in automatic application of an alleged rule that carries all the terms and conditions of an expired lease into a statutory tenancy. In rejecting the claim that rent escalator clauses were carried into the statutory tenancy the court emphatically held: “ Nor was this ‘ escalator clause ’ carried over into the statutory tenancy. The parties here, making their leases during a period of rent control, specifically restricted the clause’s operation to the term of the lease, or any renewal or extension thereof, omitting any reference to a possible subsequent statutory tenancy. The law reads some terms of an express lease into a later statutory tenancy, so as to work out a complete relationship (Stern v. Equitable Trust Co., supra) but it never so carried over, into a statutory tenancy, lease provisions which the parties themselves, in plain words, have agreed should be effective only during the running of the original lease * * * If these parties had wished their 1 escalator clauses ’ to survive beyond the leases themselves, and to run into the statutory tenancy, they could have said so * * * We conclude that the ‘ escalator clause ’ has no effect here except to prevent any increase from reaching back beyond the lease expiration dates.”
Thus the early decisions made clear that the ‘£ so-called £ stat- • utory tenancy ’ — [is] a tenancy which is not the conventional relationship of landlord and tenant but one which is created by *234 statute and to which certain important, newly created, rights and obligations attach solely by virtue of the statute. ’ ’ (Klipack v. Raymar Novelties, 273 App. Div. 54, 56.)
In this court, my learned colleague, Mr. Justice Wahl, in a very early decision succinctly expressed the guiding principle. “ The occupancy of a statutory tenant is not governed by the intentions of the parties to the tenancy, contained and evidenced in their prior dealings and contracts. The tenant stands on his statutory rights, and these become the measure of his term and his liability.” (86 Near Second Ave. Corp. v. Fennekohl, 186 Misc. 726, 729-730.)
Thus the automatic renewal clause (Park View Gardens, Inc., v. Greene, 274 App. Div. 1062); Harkap Realty Corp. v. Poler, 198 Misc. 473), the right to assign (Bisbano v. 42-20 Restaurant Corp., 280 App. Div. 790) and the right to sublet (Fifth Ave. Realty Corp. v. Lynch, 10 Misc 2d 391) have not carried over into the statutory tenancy.
It has been stated that permissive or optional covenants such as provisions for a concession and an option to purchase have not been projected into the statutory tenancy. (Fifth Ave. Realty Corp. v. Lynch, supra.) The principle behind these holdings is that the projection of such covenants is not essential to effectuate the purposes of the emergency rent laws. On the other hand provisions waiving a jury trial (Maiden Lane Serv. Stations v. Rubin, 5 Misc 2d 328; Jamaica Inventors v. Blacharsh, 193 Misc. 949) and prohibiting erection of a television antennae and the installation of air-conditioning units were projected into the statutory tenancy as not being in conflict with the emergency rent laws. (660 Locust St. Corp. v. MacPherson, 279 App. Div. 927.)
No reported case has been found with respect to the projection into the statutory tenancy of an obligation such as is pressed here by the landlord with the consequence of imposing as additional rent an obligation almost six times the amount of the emergency rent. Unlike the foregoing cases wherein tenants sought to call into the statutory tenancy, privileges available during the lease term, or avoid lease limitations during the statutory tenancy, the shoe here is on the other foot. Here, the landlord urges the projection into the statutory tenancy of a lease option, arising out of the tenant’s failure to cure violations, either to terminate the tenancy or to have reimbursement for moneys expended. Nowhere in the lease, however, is there provision for this option to survive beyond the lease term; this even though the present lease was but a renewal lease specifically entered into under the sanction of the Emergency Commercial *235 Space Rent Control Law. Thus, the holding in Wasservogel (supra) is particularly pertinent.
Puzzling indeed, is the landlord’s choice of undergoing these extraordinary costly structural improvements instead of terminating the statutory tenancy and evicting the tenants because of the illegality of the use. (Emergency Commercial Space Rent Control Law, § 8, subd. [g]; L. 1945, ch. 3, as amd.)
In the recent case of Connelly v. Regent Plumbers Supply Co., the effort of a landlord to impose upon a tenant an unconscionable increase in rent without first terminating the statutory tenancy was rendered fruitless. (Connelly v. Regent Plumbers Supply Co., 21 Misc 2d 265, revd. 10 A D 2d 847, affd. 9 N Y 2d 628.) Here too, the landlord seeks to impose upon a statutory tenant as a condition of his continued occupancy an increase in rent absurdly disproportionate and incongruous with the maximum rent under the emergency statute. To permit this landlord to impose such a condition upon the tenant’s exercise of Ms statutory right to a continued occupancy, would frustrate rather than effectuate the purposes of the emergency rent laws. Landlord has herself alone to blame for she voluntarily elected to follow this path rather than the more practical, sensible and forceful path of eviction for unlawful use.
The court therefore holds that the lease provision giving to the landlord the asserted option and privilege of expending moneys for the structural improvement of providing central heat and hot water and in seeking to recover this expenditure as “ additional rent ” from the tenant by virtue of the clause requiring compliance with municipal orders, was not projected into the statutory tenancy.
Even if this clause were considered as so projected, it is the court’s view for the reasons stated in Vogel v. Medlin (201 N. Y. S. 2d 393) as distinguished from the rule of 4370 Park Ave. Corp. v. Hunter Paper Co. (10 Misc 2d 1098, affd. 6 A D 2d 684) that when “ recognition is given to the comparatively short term of the lease, the moderate rental, the language of the lease construed in the light of contemporaneous law seems to require the conclusion that it was not the purpose or within the purview of the parties’ intentions that the tenant be subjected to the inordinate expense of making an unanticipated permanent structural improvement made necessary by a radical change in the law unforeseen when the lease was executed.” (Vogel v. Medlin, supra, p. 398.)
Petition and third-party complaint dismissed,