Thomas V. La Fauci, J.
This is a consolidation of 16 separate summary proceedings for the nonpayment of rent brought by the Federal Housing Commissioner, as landlord, against 16 separate tenants at premises No. 109-15 Merrick Boulevard and 109-25 Merrick Boulevard, St. Albans, Queens, N. Y., known as Addesleigh Apartments.
The premises constitutes two six-story residential elevator dwellings for a total of 132 residential apartment units. All of *523 said units are occupied by resident-tenants except for one professional apartment.
At the trial of these proceedings, the parties spread upon the record the following agreed set of facts and submitted the cause to the court on these facts:
(1) That title of property is in the Secretary of Housing and Urban Development under a Referee’s deed in foreclosure, dated July 31, 1967, and that the property is legally operated and supervised by the Federal Housing Administration, a subdivision of the Department of Housing and Urban Development, and managed by its agent, Cuyler & Co., Inc. Further, that the Federal Housing Administration intends eventually to sell the buildings to either a profit or nonprofit entity, co-operative or rental.
(2) That the project was originally intended to be a co-operative under section 213 of the National Housing Act (U. S. Code, tit. 12, § 1701 et seq.; § 1715e) but was unsuccessful. That the mortgage was eventually foreclosed and the mortgagee reimbursed for its mortgage under its mortgage insurance with the Federal Housing Administration, and, thereafter, title was transferred to the Department of Urban Development.
(3) That the buildings contain 132 units with one professional apartment and was built approximately seven years ago. Most of the tenants in this proceeding were original subscribers to the co-operative concept and their moneys have been refunded.
(4) That the leases of all of the tenants involved in this proceeding have expired and that the landlord gave proper 30-day notices of its intention to increase the monthly rentals. That the increased amounts set forth in the petitions are accurate, and represent an amount which is questioned by tenants and is at variance with the City Rent Stabilization Law of 1969. (Local Laws, 1969, No. 16 of City of New York; Administrative Code of City of New York, ch. 51, tit. YY.) That there is presently due and owing to the landlord the amount claimed for in the petitions, together with all subsequent months.
(5) That all of the original rental amounts have been deposited with the petitioner landlord, and the increased amount together with court costs are to be deposited with the attorney for the respondent tenants. Said payment and receipt thereof does not prejudice any of the rights of the parties.
The tenants’ answers in addition to the defense of general denial and payment state:
(1) That the premises are covered by the New York City Rent Stabilization Law of 1969 and that the landlord, has failed to comply with the terms thereof, and
*524 (2) That the actions on the part of the landlord are unconstitutional in that they violate the tenants ’ due process and the equal protection clauses of the Constitution.
The court finds that real estate owned, operated, and managed by the Federal Housing Administration, as a subdivision of the Department of Housing and Urban Development is exempt from coverage of the Rent Stabilization Law under the exemption of subdivision (a) of section YY51-3.0 of the Administrative Code of the City of New York “dwelling units (1) owned or leased by, or financed by loans from, a public agency or public benefit corporation ’ ’. The Federal Housing Administration is a public agency under the federal statutes (U. S. Code, tit. 12, § 1701 et seq.).
The City Council of the City of New York has no right to regulate the actions of the Federal Housing Administration unless express statutory authority is given by Congress under McCulloch v. Maryland (4 Wheat. [17 U. S.] 316). In the area of rent control legislation the United States Supreme Court has held in United States v. Wittek (337 U. S. 346) that a Washington, D. C., rent control statute does not affect property of the United States administered by a Federal agency.
The Federal Housing Authority has the authority to fix rents under the power delegated to it in the Code of Federal Regulations, title 24, section 2, subpart 2. The Court of Appeals of New York in Wasservogel v. Meyerowitz (300 N. Y. 125), and Schmoil, Inc., v. Federal Reserve Bank (286 N. Y. 503) has held that once a Federal agency fixes rents in accordance with its authority the State courts have no jurisdiction to review administrative orders.
In Fieger v. Glen Oaks Vil. (309 N. Y. 527, 533-534) the Court of Appeals stated:
“ State courts have no power whatever to revise such official acts performed by Federal Officials under authority of acts of Congress. In the Wasservogel case (supra), this court said flatly that when Federal authorities and Federal officers acting within their authority have fixed rents, the State courts may not in any manner revise or review those determinations, directly or indirectly, and that all State court action is forbidden when it would amount to ‘ an assertion of control of the manner in which the Federal rent office performed the function assigned to it by Congress. ’ We see no escape from that here. The Federal Housing Act, as above stated, authorized the Administrator, £ in his discretion ’ (see § 608, subd. [b], par. [1]) to regulate rents. So empowered, he adopted rule or regula *525 tion section 280.30 under which he established maximum rents for these and similar properties. The maximum rents so established by him are still in effect and there is no assertion that the rents charged by defendants to these tenants were in excess of those maxima. We will assume with plaintiffs that this maximum rent fixation was for the benefit of tenants. There is nothing in that concept, however, which changes the settled law that the State courts cannot revise such an act of the Federal G-overnment but must take heed of it and abide by it until it is changed by procedures, if any, established for such change. Such is the clear import of Wasservogel and the cases it cites.”
In the lower court, in Fieger v. Glen Oaks Vil. (206 Misc. 137, 140-141), the rule was stated: “ There is nothing in section 608, or the regulations thereunder which gives tenants any right of action against the landlord. The sole and exclusive jurisdiction to regulate, control and enforce the provisions of section 608 is vested in the Commissioner, and the courts of this State have no power to superintend or revise his official acts performed under Acts of Congress. In the performance of his duties as Commissioner, he is not amenable to the statutes and regulations of the State, directly or indirectly (McCulloch v. State of Maryland, 4 Wheat. [U. S.] 316; Ohio v. Thomas, 173 U. S. 276; Johnson v. Maryland, 254 U. S. 51; Hunt v. United States, 278 U. S. 96; United States v. Mayo, 47 F. Supp. 552, affd. 319 U. S. 441; Penn Dairies v. Milk Control Comm., 318 U. S. 261, 748.) ” (See, also, Judge Crawford, Sup. Ct., Queens County, Rubel v. Linden Towers Co-op No. 6, 39 Misc 2d 620; Dinkes v. Glen Oaks Vil., 206 Misc. 143.)
The tenants contend that the Federal Housing Administration’s intention to dispose of the property should bring this property under the Rent Stabilization Law. The United States Supreme Court held in United States v. Mine Workers (330 U. S. 258) that even if the United States owned property for one day such property would be exempt from local or State law.
The tenants’ position that the action of the Federal Housing Administration is unconstitutional is without merit or foundation. In Port of New York Auth. v. Linde Paper Co. (205 Misc. 110), which interpreted an exception in the Emergency Commercial Space Rent Law (L. 1945, eh. 3, as amd.) similar to the one before this court, the tenants argued that the exemption deprived the tenants of equal protection of the laws and violated their due process. In denying their contention and awarding final order for the landlord, the court held (p. 117): “ It remains *526 only to dispose of tenant’s contention that exemption for the Port Authority from the Emergency Rent Law would deprive tenant of the equal protection of the laws and violate the due process clause of the Fourteenth Amendment of the Federal Constitution. This contention is overruled. The Supreme Court .of the United States has clearly established that exemption for the sovereign or its agencies does not violate the due process or equal protection clauses of the Fourteenth Amendment because such a classification is completely reasonable. (Carmichael v. Southern Coal Co., 301 U. S. 495; Puget Sound Co. v. Seattle, 291 U. S. 619; Perley v. North Carolina, 249 U. S. 510.) Bringing the case down to the Port Authority itself, it was held in the Bush Terminal case, (supra) that exemption from general real estate taxation of the very building involved in this case, Inland Terminal No. 1, did not constitute such a violation of the Fourteenth Amendment. ’ ’
In the Bush Term. v. City of New York (282 N. Y. 306, 322) which was referred to earlier, the court held:
‘ ‘ A municipality or agency of the State carrying out a public purpose may at times compete with private business. Those owning the private business are not deprived of their right to the equal protection of the law, guaranteed by the Constitution of the United States, because the private business is subjected to a tax from which the State agency is immune (Puget Sound Power & Light Co. v. County of King, 264 U. S. 22.) The general principles stated in the opinion in that case justify the exemption from taxation of property held by a public agency for a public purpose and not primarily for revenue, though as an incident of the execution of its public purpose the public agency derives revenue from a use of the property in competition which property put to similar use by private owners (cf. State Board of Tax Commissioners v. Jackson, 283 U. S. 527, 537.) ”
The court sympathizes with the tenants in this case, as there does exist a housing emergency as stated in section YY51-1.0 of the Rent Stabilization Law, The purpose of this law is to alleviate the burdens and hardships which tenants are subject to ; however, the law is clear that the Federal Housing Commissioner is entitled to the increases in rent in the petitions.
Judgment for the petitioner for the amounts set forth in the petitions. Stay until April 15.