OPINION OF THE COURT
Allen Murray Myers, J.
Both parties agree that all the material facts are before the court, the facts are undisputed and that, therefore, the issue between them can be resolved as a matter of law. Both have moved for summary judgment.
*687 FACTS
Defendant, Jackson Jordan, is and admittedly for several years has been a resident of North Miami, Florida, where she owns her own home, resides all year around, where she votes, and where she has been granted a homestead exemption as a domiciliary of Florida.
In 1950, defendant Jordan, having been a tenant since 1948, of a penthouse apartment at 108 East 91st Street, in the Borough of Manhattan, entered into a stipulation of settlement with the then landlord of an action for treble damages plus attorneys’ fees by reason of rent overcharges in violation of the residential rent control laws. In consideration of the settlement, the landlord executed and delivered to Jordan a document which provided that so long as Jackson Jordan, residing at 108 East 91st Street, New York, remained in possession, personally or through any subtenants, the rent for the apartment would be the sum of $132.25 per month. Thereafter, Miss Jordan remained in possession for many years, subletting the apartment on one or two occasions for a short time, or else permitting the apartment to remain vacant while she was away.
In 1963, Jackson Jordan purchased a residence in Florida, but continued to live in the New York apartment for several years thereafter.
In 1970, the building at 108 East 91st Street, New York City, was sold to a co-operative corporation, and the shares of stock for this apartment were purchased by the plaintiff herein, who became the proprietary lessee. He could not reside in the apartment because of the defendants’ tenancy and at the commencement of this action, the plaintiff was paying maintenance charges of $427.12 per month, suffering a net loss of $3,538.44 per annum.
On July 9, 1976, defendant Jordan rented the apartment to the defendant Saunders, pursuant to sublease for a period of three years at a rental of $350 per month, thus realizing a profit of $2,613 per year while permanently residing in Florida. This was the first time in 26 years that she attempted a long-term lease.
ISSUE
The issue, as my learned colleague Greenfield, J., found it to be in denying a previous motion by the defendant, Jordan, *688 for summary judgment, and as affirmed by the Appellate Division, is whether the assumption by the tenant (Jordan) that the stipulation of settlement gave her a unqualified life estate, may not have an unconscionable result proscribed by subdivision 2 of section 235-c of the Real Property Law. In order to resolve that issue, the court must determine what was the nature of Jordan’s tenancy at the time the stipulation of settlement was executed.
INTERPRETATION OF THE APRIL 26, 1950 DOCUMENT
As part of the settlement of an action under the City Rent and Rehabilitation Law for treble damages and attorneys’ fees by reason of rent overcharges (Johnson v 323 East 9th Corp., 53 Misc 2d 308)- pending in this court, entitled, "Jackson Jordan, Plaintiff, against Carnegie Hill Estates, Inc., Defendant”, the latter, the then landlord of the premises in question, executed and delivered on April 26, 1950 to Jackson Jordan, the then tenant, the document, the interpretation of which is before this court. In pertinent part the document states the following:
"In consideration of the settlement by plaintiff, Jackson Jordan of her claim against the * * * defendant, Carnegie Hill Estates, Inc. * * * for excess rents paid to said defendant * * * Carnegie Hill Estates, Inc., landlord of * * * 108 East 91st Street * * * hereby agrees that so long as Jackson Jordan, tenant of the Pent House apartment A * * * remains in possession personally or through any subtenants, the rent for said apartment shall be the sum of $132.25 per month.
"The said tenant, Jackson Jordan, shall at all times have the right to sublet”.
Of utmost significance to this court is the absence of any words of conveyance of an interest in land for any specified term which is, after all, what a lease is. The usual words to the effect that, "the lessor rents or leases to the lessee and the lessee hires and takes from the lessor” certain premises for a particular term are not contained in this document. While no special words are needed to create a leasehold, it is apparent in this case that the document in question was not a lease, but merely a modification of an existing tenancy. Milton Lefenfeld, who executed the document as president of Carnegie Hill Estates, Inc. was a lawyer, his corporation was represented by another lawyer and the document was prepared by the lawyer *689 for the tenant. It is beyond peradventure that these three lawyers knew how to draw a lease, if that were their intention. It must be assumed therefore, that their intention was merely to modify the existing tenancy, and not to draw a new lease.
THE EXISTING TENANCY
From what one gleans from the papers and briefs before the court, on April 26, 1950, the defendant Jackson Jordan was a statutory tenant under the provisions of the residential emergency rent law in force at that time. As such, she could not be evicted as long as she paid the registered maximum legal rent for the apartment for as long as it was her principal residence. The emergency rent law only protected residents. It did not protect absentee tenants whose principal place of abode was elsewhere. The emergency rent laws would not protect a prime tenant who sought to sublet his rent controlled apartment for the commercial purpose of making a profit (Bohmfalk v Zima, 58 Misc 2d 357; Wasservogel v Meyerowitz, 300 NY 125).
It must be assumed that these three lawyers knew and understood the nature of Jordan’s tenancy. With that in mind we can now see the significance of the condition precedent "so long as said Jackson Jordan * * * remains in possession * * * personally” (emphasis added). Obviously, the word "personally” was used for a reason. It was not merely surplusage. And the only logical reason for its use was to indicate that the term of the tenancy would last only so long as the apartment was used as Jordan’s principal residence. The document must also be interpreted to mean that when it provided that Jordan had the right to sublet "at all times” it meant at all times during the period that the apartment was Jordan’s principal residence; for at such time as Jordan established a principal residence elsewhere, the statutory tenancy would terminate.
As so interpreted the document makes sense and is not unconscionable. The document was never intended to nor did it convey to Jordan an unqualified life estate to the penthouse. The value of such an unqualified life estate would have no reasonable nexus to the amount involved in the settled lawsuit, and therefore would be unenforceable either as a penalty (Fairfield Lease Corp. v Marsi Dress Corp., 60 Misc 2d 363) or as unconscionable under subdivision 1 of section 235-c of the Real Property Law.
*690 CONCLUSION
The evidence is unrefutable that the defendant Jordan is now and for some years past has been a permanent resident of Florida, that that is where she maintains her principal place of abode and I so find. In addition to all of the other evidence to support that finding, the sublease of the penthouse for a period of three years to the defendant, Roger Saunders, also tends to support it.
There being nothing in Jordan’s papers of sufficient substance to raise any issue of fact, I find that Jordan’s tenancy has terminated.
Plaintiffs motion for summary judgment is granted. Jordan’s cross motion for summary judgment is denied.
Settle judgment which shall contain a 60-day stay of the issuance of a warrant upon condition that the defendants pay $427.12 per month for use and occupation.