In the Matter of FRANK KONIGSBERG et al., as Tenants' Committee of 225 West 86th Street, New York, N. Y., Appellant, against JOSEPH J. CAPUTA, as State Rent Administrator, Respondent.

First Department, April 26, 1960.

*Eugene J. Morris* of counsel (*Matthew J. Domber* and *Robert S. Goldstein* with him on the brief; *Demov & Morris,* attorneys), for appellant.

*Florence R. Zimmerman* of counsel (*Harold Zucker,* attorney), for respondent.

McNALLY, J.  In this article 78 proceeding, the appeal is from an order dismissing the petition herein.  The petition is one to annul the final determination of a protest addressed to the order of the Local Rent Administrator restoring a rent decrease and denying the application of the tenants for a further decrease in rent.

The premises consist of six 12-story multiple dwellings grouped around a common courtyard bounded by Broadway, West 86th Street, Amsterdam Avenue, and West 87th Street, County of New York.

On August 31, 1950 the landlord's application to convert six manually operated passenger elevators to automatic elevators was granted provided, among other things, that the landlord maintain 24-hour doorman service at the West 86th Street main entrance, 24-hour guard service within the courtyard, and 24-hour manually operated central switchboard service.

On June 17, 1957 the tenants applied for a decrease in rent for failure to maintain essential services.  The said application was terminated by a stipulation dated December 3, 1957 between the tenants and the landlord and approved by the Local Rent Administrator whereby the parties stipulated that the services therein specified and described were essential services. Among them were 24-hour doorman service at the main entrance

on West 86th Street, 24-hour guard control in the inner court and adequate switchboard service.

On June 3, 1958 the tenants filed a second application for a decrease in rent by reason of the landlord's failure to maintain essential services. On July 23, 1958 an order was made by the Local Rent Administrator reducing the maximum rent by reason of the landlord's failure to comply with the stipulation of December 3, 1957 in respect of the intercommunication system, the 87th Street service door, stair well door locks, walks, driveway and passenger elevators. The said order reserved the right of the tenants to apply for a further decrease in the event the landlord fails to render the required doorman service at the main entrance and guard service in the inner court.

Subsequent to the stipulation of December 3, 1957 and prior to the order decreasing the rents made July 23, 1958, the tenants and the landlord entered into a stipulation dated April 1, 1958. The stated purpose of the last stipulation was to implement the stipulation of December 3, 1957. Thereby the landlord undertook to install a new intercommunication switchboard and to install it on the wall of the switchboard room so as to permit observation by the operator. thereof of the building entrance and the courtyard. In addition, the landlord, by the last-described stipulation, undertook to proceed with the renovation of five of the passenger elevators, one having been renovated prior thereto, at the rate of no less than one elevator a month. The stipulation of April 1, 1958 was before the Local Rent Administrator and his order of July 23, 1958 was made in the light thereof. Implicit therein — in the stipulation — is an admission of a deficiency in essential service in respect of the intercommunication system and passenger elevators. On said date it appears that the landlord had failed to install an intercommunication system as provided in the stipulation of April 1, 1958 and had not renovated the elevators as therein provided.

On August 15, 1958 the tenants filed a third application for the reduction of rent grounded on the deficiencies in essential services reserved in the order of July 23, 1958, to wit, failure to render doorman service at the main entrance and guard service in the inner court. Thereafter and on September 3, 1958 the landlord countered with an application for the restoration of the reduction in maximum rents effected by the order of July 23, 1958. After a conference had on October 20, 1958 a report was made by an examiner and the supervisor of the " T " unit of the Local Rent Administrator recommending that the tenants' application to reopen the proceeding to reduce the maximum rents be denied and that the landlord's application to

restore the reduction of the maximum rents be processed on the merits. The said report notes parenthetically that the intercommunication system was located in its present position as a result of the order permitting the conversion to automatic operation of the passenger elevators and it would be unjust to require the landlord to relocate it now.

On November 28, 1958 the Local Rent Administrator made his order adjusting the maximum rents by eliminating the decrease thereof ordered on July 23, 1958. The order of November 28, 1958 is grounded on the restoration of essential services in regard to intercommunication, the 87th Street service door, walks, driveway and elevators. On December 22, 1958 the tenants filed a protest addressed to the order of the Local Rent Administrator dated November 28, 1958. On March 18, 1959 the State Rent Administrator issued his order denying the protest and affirming the orders of the Local Rent Administrator. The said order provides, in part, as follows: "With regard to other alleged decreases in services raised by the tenants in their protest, the tenants are advised that such alleged decreases in services, to wit: odors in the hall and general building maintenance are not considered herein. Although such services may have been included in the original stipulation between the tenants and the landlord it should be noted that such alleged decreases in services were not the basis for the Local Rent Administrator's original decreases in the maximum rents of the subject units nor mentioned in the landlord's application for a restoration of the maximum rents. Should the facts so warrant, the tenants are advised that they may file separate applications for an adjustment in the maximum rents by virtue of such alleged decreases in services, and this order and opinion is without prejudice to the right of the tenants to file such application."

We address ourselves to the following alleged deficiencies in essential services: (1) doorman service; (2) guard service; (3) elevator service; and (4) intercommunication switchboard service. The guard, doorman and switchboard services are interrelated.

Section 24 of the State Rent and Eviction Regulations provides that the landlord "shall provide * * * the same essential services, furniture, furnishings and equipment as were provided, or were required to be provided, on March 1, 1950 or any subsequent date determining the maximum rent." It would appear that until in or about 1956, in addition to doorman and guard services, the landlord furnished intercommunication switchboard service and that the board was operated by a person other than the doorman or guard. The order of August 31,

1950 enabling the conversion to automatic operation of the passenger elevators was conditioned upon 24-hour service in all three respects, to wit, doorman, guard and switchboard. The required service in regard to switchboard was "24 hour *manually operated* central switchboard" (emphasis supplied).

The stipulation of December 3, 1957 approved by the Local Rent Administrator provided for integration of doorman, guard and switchboard service as follows: "(e) The landlord shall maintain 24 hour doorman service at the main entrance to the subject premises at 86th Street; 24 hour guard patrol at the inner court of the subject premises; and proper and adequate intercommunication switchboard service. The employees assigned to perform the doorman, guard and switchboard duties will be assigned no other duties requiring them to be absent from their designated stations."

The aforesaid provision, obviously, was an attempt on the part of the tenants to co-operate with the landlord by enabling either the doorman or guard to attend the switchboard. However, it is also clear that it was not the intention of the tenants to forego proper and adequate intercommunication switchboard service, or that it was the intention of the tenants to waive substantial compliance with the requirement of 24-hour doorman and 24-hour guard control.

Between December 3, 1957 and April 1, 1958 certain deficiencies developed in regard to the doorman, guard and switchboard services, in part attributable to the time required to properly discharge the intercommunication switchboard service and to mechanical failures and deficiencies thereof. Accordingly, the stipulation of April 1, 1958 was made towards the end of rectifying the deficiencies. It is clear, and undenied, that by the stipulation of April 1, 1958 the landlord undertook to install a new switchboard and, to locate it so that the operator thereof could observe the main entrance on 86th Street.

In regard to the elevators, the record demonstrates a history of breakdowns and suspensions of use due to wear, tear, mechanical deficiencies and obsolescence. The stipulation of April 1, 1958 also addresses itself to the passenger elevators and expressly provides for the renovation of five of them, one of them having been renovated prior thereto.

On this appeal the State Rent Administrator contends that he is not bound by the stipulation of April 1, 1958, and that the services thus classified in said stipulation are not thereby essential within the meaning of the State Residential Rent Law. We are of the opinion that the stipulation of the parties in the light of the facts and circumstances herein is material on the issue

of what constitutes essential services and must be considered in the evaluation thereof and failure to consider the stipulation was error.

Subdivision 5 ([par. b]) of section 4 of the State Residential Rent Law (L. 1946, ch. 274, as amd.) enables the Temporary State Housing Rent Commission to provide regulations to assure, among other things, the maintenance of essential services provided on the date determining the maximum rent. Section 24 of the State Rent and Eviction Regulations represents the exercise of the judgment of the commission thereon and provides for the maintenance of essential services on the date determining the maximum rent.

It is uncontroverted that on July 23, 1958, when the maximum rent was last adjusted, prior to the institution of the proceedings herein, among the essential services required to be maintained by the landlord herein were the intercommunication switchboard, doorman, guard and elevator services. The landlord does not dispute its obligation to maintain said services. On the contrary, the landlord asserts that he has satisfied the statutory requirements in regard thereto. The tenants, on the other hand, maintain that the landlord's performance as to said services has been inadequate, that the present condition of the elevators requires constant repairs with accompanying dislocations in service, that the same applies to the intercommunication switchboard and that the condition and location of the latter and the volume of switchboard activity require the diversion of the services of the doorman or guard resulting in a substantial diminution of adequate switchboard, doorman and guard services.

In the light of the complaints and negotiations regarding the essential services extending over a long period prior thereto the agreement on April 1, 1958 constitutes an admission on the part of the landlord that a complete and major renovation is required to eliminate the frequent interruptions in elevator service and that the condition of the intercommunication switchboard is beyond correction by ordinary repairs.

The conduct of the interested parties is a material factor in the determination of what are essential services. In *Matter of Kerbs* v. *Weaver* (6 N Y 2d 781) a reduction in elevator service between midnight and 8:00 A.M. was held not to constitute a reduction in essential services in the light of the failure of the tenants to complain of the reduction over a period of six years.

In *Matter of R. E. Associates* v. *McGoldrick* (280 App. Div. 202, 204) the court said: " It is true that tenants may not waive their rights under the rent law, but that does not mean their

actions reflecting their views as to essential services must be disregarded.''

Although in *R. E. Associates* the conduct of the tenants served to establish that the omission did not constitute a failure to furnish essential services, the principle was applied in the opposite direction in *Matter of Efef Associates* v. *McGoldrick* (281 App. Div. 673, motion for leave to appeal denied 305 N. Y. 929) where the court said: '' the rent increase was obtained under circumstances and upon representations which amounted to an undertaking by the landlord that the service of elevator operators would be maintained as long as the increase was in effect.'' There the landlord was required to continue to furnish manual operation on the automatic elevators.

In *Matter of Edgar Ellinger, Inc.* v. *McGoldrick* (281 App. Div. 821) the determination of the State Rent Administrator that the maintenance of switchboard service was essential was held unwarranted in part because the lease agreements provided to the contrary. The holding in the last-cited case serves to emphasize that agreements and stipulations made between the parties with regard to the services in question may not be ignored.

In *Matter of 52 Clark Inc.* v. *McGoldrick* (279 App. Div. 913, affd. 304 N. Y. 676) the landlord sought leave to discontinue maid service provided for in the lease. The Administrator denied the application. ·Special Term reversed the determination of the State Rent Administrator and the Appellate Division reversed the order thereon made and dismissed the petition on the ground that the lease between the parties was determinative of the essential services as well as the maximum rent.

In *Matter of United Security Corp.* v. *McGoldrick* (281 App. Div. 859) the court modified the conditions of the installation of automatic elevators because '' this more substantially equals the service rendered before the conversion and it had landlord's contemporary acquiescence as a condition of conversion.''

It is clear therefore that the agreements, stipulations and conduct of the parties affected thereby are material considerations in the determination of the essentiality as well as the adequacy of services required to be rendered under the statute and regulations.

It also appears that the determination of the State Rent Administrator herein was not in conformity with the statute. The said determination reserves for separate applications the part of the protest grounded on the presence of odors in the hall and the deficiency in general building maintenance.

Section 4 (subd. 4, par. [d]) of the State Residential Rent Law proscribes any increase in the maximum rent unless it is certified that essential services are being maintained. (See *Matter of Halperin* v. *Caputa*, 10 A D 2d 286.) In the absence of a specific finding that the alleged omissions do not constitute a failure to maintain essential services, the restoration of the decrease in maximum rents effected by the order of the State Rent Administrator herein is in violation of the statute.

We conclude that the determination is arbitrary and capricious and that the order should be reversed, on the law, the determination of the State Rent Administrator annulled, and the matter remanded for proceedings not inconsistent herewith, with costs.

BREITEL, J. P., RABIN, VALENTE and STEVENS, JJ., concur.

Order unanimously reversed and determination of the State Rent Administrator annulled and the matter remanded to the Administrator for proceedings not inconsistent with the opinion of this court, with $20 costs and disbursements to petitioner-appellant.