Ben J. Slutsky et al., Landlords, *v.* Rose D. Cohen, Tenant, and " John Doe ", Undertenant.

Municipal Court of the City of New York, Borough of Manhattan, June 19, 1962.

*Mortimer G. Levine* for landlords. *Elliott J. Sachs* and *Rudolph de Winter* for tenant and Carolyn Bush.

MAXWELL SHAPIRO, J. By this holdover proceeding landlords seek to oust this residential statutory tenant on the ground that by a new weekly subletting to a stranger, there has been a violation of the expired lease clause against subletting without the consent of the landlords. Contrary to the express written prohibition of the landlords that tenant was not to sublet, tenant nevertheless proceeded to do so by advertising in the *New York Times.*

Tenant took possession of the apartment under a lease which expired on February 28, 1954. Tenant claims that following her husband's death in 1952 she shared her apartment with various persons who paid her rent therefor. On September 24, 1956, the Rent Commission upon the application of landlords' predecessor, issued its order increasing the maximum rent during periods of subletting from $97.52 per month to $107.27 per month.

Present landlords took title in April, 1958. Tenant paid and landlords accepted the higher rent based upon tenant's subletting until October, 1961. By letter dated October 2, 1961 tenant notified landlords that she was not subletting and paid the lower rent which landlords accepted. Tenant further indicated her intention to sublet again. On October 18, 1961 landlords wrote tenant that since she had ceased to rent space in her apartment the landlords elected to prohibit any further renting, increased occupancy or subletting.

Nevertheless, on November 1, 1961 tenant notified the landlords in writing that she had obtained a new subtenant and tendered the increased maximum rent under the subletting order of the Rent Commission. The landlords refused the tender of rent and countered with a demand that the subletting terminate at the peril of the institution of these holdover proceedings.

Instead of complying, the tenant made successive subletting arrangements with different people. Tenant is presently subletting and sharing her apartment, and receiving a weekly rent of $18.65.

The pertinent provisions of the lease are as follows: " 3. Tenant  *  *  *  shall not  *  *  *  underlet, or use or permit the demised premises or any part thereof to be used by others, without the prior written consent of Landlord in each instance. If  *  *  *  the demised premises or any part thereof be underlet or occupied by anybody other than Tenant,

Landlord may, after default by Tenant, collect rent from the assignee, under-tenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, underletting, occupancy or collection shall be deemed a waiver of this covenant, or the acceptance of the assignee, under-tenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. The consent by Landlord to an assignment or under-letting shall not in any wise be construed to relieve Tenant from obtaining the express consent in writing of Landlord to any further assignment or under-letting.''

At the outset, tenant defends by asserting that the application of landlords' predecessor to the Rent Commission for an increase in the maximum rent because of subletting having been granted, such subletting has become an '' essential service '', not to be discontinued without a specific order of permission by the Rent Commission. Concededly, no application has been made by the landlords to the Rent Commission to revoke its prior order.

The language of section 24 (services included in the maximum rent) and section 35 (decrease of services; application, order or report) of the State Rent and Eviction Regulations makes obvious that neither by specific words nor by meaning or intent, can subletting be placed in the same category as elevator service, doorman service, maid and linen service, painting and decorating, etc., — the common garden variety of '' essential services ''. The passing reference in the unreported decision of *Matter of 208–210 East Seventh St. Corp.* (N. Y. L. J., Feb. 21, 1962, p. 12, col. 8) that the right to sublet is an essential service under section 24 is not persuasive because that was a proceeding to review the determination of the State Rent Administrator and predicated upon a consideration of whether his action was arbitrary. The comment was not necessary to the determination and was mere *obiter*. Moreover, the facts there are far apart from those present in this holdover proceeding.

The character and sense of essential services as called for by the regulations are more aptly delineated in *Matter of Konigsberg* v. *Caputa* (10 A D 2d 379). There, doorman service, guard service, elevator service and the like, spell out the sense and meaning of '' essential services '' under sections 24 and 35. A tenant's privilege to sublet even predicated upon compulsion imposed upon the landlord and though accompanied by an increase in the maximum rent, can hardly be within the concept and rationale of '' essential services ''.

Hence, the court does not agree with tenant's theory that the privilege of subletting is an '' essential service '' and that the

landlords are obliged first to apply to the Rent Commission for a revocation of its prior order increasing the maximum rent if subletting should occur, before the landlords may notify the tenant to refrain from a new subletting. (See *Fifth Ave. Realty Corp.* v. *Lynch,* 10 Misc 2d 391.)

Tenant's main defense is that landlords' predecessor by accepting rent with knowledge of subletting and sharing, waived the above-quoted provisions of the lease during the lease term and as a result, this restrictive covenant has become a nullity. Tenant also presses the novel contention that a landlord who gives " passive consent " is not barred from prohibiting subsequent sublettings while a landlord who not only receives rent but by affirmative conduct — here by application of landlords' predecessor to the Rent Commission for the establishment of a maximum rent based upon subletting — sanctions sublettings, and is permanently prohibited from barring subsequent sublettings — this despite the very clear lease provision that the consent of the landlord to an underletting shall not relieve the tenant from obtaining the express consent of the landlord to any further underletting.

It is manifest that the above-quoted restriction upon subletting was effective during the statutory tenancy. (*Stern* v. *Equitable Trust Co.,* 238 N. Y. 267; *Wasservogel* v. *Meyerowitz,* 300 N. Y. 125; *660 Locust St. Corp.* v. *MacPherson,* 279 App. Div. 927; see, particularly, *Matter of Brown* v. *Denner* [30 Misc 2d 229] for rationale of statutory tenancies and unless otherwise rendered inoperative [*Farose Realty Corp.* v. *Shaff,* 117 N. Y. S. 2d 375] is binding upon the parties.)

The critical question hence, is whether *after the tenant has ceased to sublet,* the landlords were nevertheless barred, because of prior sublettings, from prohibiting subsequent sublettings by the tenant.

The basic rule is: " Other covenant or conditions in a lease are regarded as capable of continuing breaches so that a waiver of a cause of forfeiture for one breach will not prevent the enforcement of a forfeiture for a later breach. This is true as to a covenant by a tenant not to sublet the whole or a part of the demised premises without the consent of the landlord, and the waiver of a forfeiture on account of one subletting will not preclude the enforcement of a forfeiture for a new subletting." (3 New York Law of Landlord & Tenant, § 1020; see *Fischer* v. *Ginzburg,* 191 App. Div. 418.)

In *Matter of Northerly Corp.* v. *Hermett Realty Corp.* (15 A D 2d 888), the Appellate Division most recently reaffirmed this principle: " The second defense alleges that the landlord has

*permanently* waived and nullified the covenant by the acceptance of rent knowing of subletting without the written consent of the landlord * * * The second defense of waiver is insufficient in law. Even if there had been a waiver of the breach of the covenant against subletting, the landlord's consent to prior sublettings does not constitute a waiver as to future breaches.'' (Italics supplied.)

Crucial difference from the usual factual situations where the landlord seeks to terminate an existing subletting previously consented to, exists here. The tenant relies upon decisions not apposite because here, there was no subletting when the landlords notified the tenant that thereafter sublettings would not be permitted. To the contrary, there was an acceptance of rent by the landlords in the precise amount based upon no subletting. It was at this point that the landlords elected not to permit any subsequent sublettings.

This right to call an end to the practice of subletting was not waived by consenting to prior sublettings which had ended nor by the application of landlords' predecessor for an establishment of a new maximum rent, if the tenant should sublet. By so applying, landlords' predecessor did nothing more than to seek compensation for a use created by the tenant. That landlord was merely obtaining relief where tenant unilaterally expanded a statutory residential tenancy into one where tenant was obtaining revenue from the use and occupancy of the apartment. It was not the object or the goal of the Emergency Rent Laws to protect tenant's self-created revenue-producing device. The court finds no legislative mandate that tenant should be protected under the rent laws so as to enable tenant to be paid rent by strangers. This certainly was not a contemplated use under this residential tenancy.

If the landlords in October, 1961 chose to forego the higher maximum rent based on subletting that was landlords' right. Landlords had the privilege so to notify the tenant in advance that landlords would not consent to subsequent sublettings.

The excuse proffered by the tenant that she was unable to seek out a new subtenant because of illness, does not preclude the landlords from their choice of not permitting subsequent sublettings.

Although the Emergency Rent Laws are compulsive, the court does not find such compulsion unlimited. The landlords' use of their property is to be restrained only to the extent necessary to accomplish the objects of emergency legislation and no further. (See *Bisbano* v. *42-20 Restaurant Corp.,* 280 App. Div. 790, appeal dismissed 304 N. Y. 780.)

Accordingly, the court finds that the tenant intentionally violated a substantial obligation of the tenancy. The landlords having taken appropriate steps to terminate the tenancy, are entitled to a final order.

Final order for landlords. Issuance of the warrant is stayed to July 15, 1962. Tenant is to pay for use and occupation the same amount heretofore paid as and for the legal maximum rent.