## (February 4, 1965)

■    In the Matter of DUNBAR APARTMENTS Co., Appellant, v. HORTENSE W. GABEL, as City Rent and Rehabilitation Administrator, Respondent.

APPEAL (1) from an order of the Supreme Court at Special Term, entered March 31, 1964 in New York County, which dismissed an article 78 (CPLR) proceeding brought by a landlord and upheld an order of the City Rent and Rehabilitation Administrator denying landlord's application to eliminate from its maximum rents the service of unlimited electric current to tenants, and (2) from the judgment entered thereon.

MEMORANDUM BY THE COURT. Order and judgment dismissing the petition and affirming the determination of the respondent denying petitioner's application to discontinue supplying electricity to its tenants as part of the monthly rent affirmed on the law and on the facts, with $50 costs to respondent. In 1952 the petitioner applied for a rent increase to include unmetered electric current as an essential service included in tenants' maximum rents which application was granted. The basis for granting petitioner's application in 1952 was in consideration of petitioner's treating electric current as an essential service included in the maximum rent and converting it from a varying to a fixed amount. On the present application the petitioner states its reason for the requested change as "convenience only" and it has not submitted any evidence to form a basis for making the requested change. On the facts presented to the respondent on this application the denial of the request was proper and not arbitrary or unreasonable. (*Matter of Meyfam Management* v. *Weaver,* 15 Misc 2d 687.)

STEUER, J. (dissenting). Petitioner is the landlord of a block of apartment buildings housing some 535 tenants. In this proceeding it challenges the denial of its application to respondent City Rent Administrator for leave to discontinue the existing method of supplying electric current to the tenants.

The background of the application lies in the procedures adopted by respondent's predecessor, the State Rent Administrator, to cope with the changes necessitated by the ruling, in 1952, of the Public Service Commission. The latter at that time forbade the practice generally followed by landlords of apartment buildings of purchasing electricity from a public utility and of submetering to tenants. Landlords were given the option of having the tenants make their own arrangements with the utility or of dealing with the utility themselves. Under the latter option, adopted by petitioner's predecessors in title, the landlord paid the utility for the current used by the tenants and was allowed a rent

increase based on a formula of the average use by tenants in similar apartments.

In effect what the petitioner seeks permission to do is to change the option selected in 1952 and use the other one. Permission was refused on two grounds: first, that this would constitute a diminution in service; second, that having selected the first option which it believed to be more advantageous at the time, it would be unfair to allow a change when the option selected has been found to be less advantageous or has become so later.

As to the first ground, this is not a diminution or discontinuance of an essential service. The landlord does not and never did supply electricity. That was done by the public utility, in this instance the Consolidated Edison Company. What the landlord did do was to supply the electric wiring by which the electricity was made available to the tenants. This is an essential service, and petitioner so recognizes. Concededly, if the petition is granted some rewiring would be required and there might be other expenses, such as meter installation. These the landlord concedes would be its expense, which it states it is willing to pay. As respondent has ample power and facility to see that this condition is complied with, no difficulty on this score affected its determination on the petition.

Coming now to the second objection, this is based in part on the contention that, the charge for electricity having been part of the rent, adjustments would have to be made in the maximum rent to reflect not only the original increase allowed but also whatever percentage increases on the original rental and attributable to the electricity increase were from time to time allowed. Petitioner concedes that this should be done. Respondent's objection that petitioner has not submitted the calculations involved is not well taken. In the final analysis, it will be respondent's determination of what decreases in rent are called for that will govern. While the calculations may be involved and tedious, this is no reason for denying the relief asked for.

The balance of the objection is based on some abstract concepts of fair play. First, having had a choice in the beginning, a landlord must stick by that choice. And if the landlord made a profit by virtue of the fact that the total allowance in rent increase may have exceeded the cost of the electricity supplied, no change should be allowed because it now appears that this cost may exceed the allowances. Neither of these considerations is within the province of the respondent. The office has no general equitable powers over landlords or tenants. "Laws are made by the law-making power and not by administrative officers acting solely on their own ideas of sound public policy, however excellent such ideas may be" (*Matter of Picone* v. *Commissioner of Licenses*, 241 N. Y. 157, 162). Nor do the Emergency Rent Laws from which the Rent Administration Office derives its existence place any restrictions on the use of properties other than those contained in the statute (*Bisbano* v. *42-20 Restaurant Corp.*, 280 App. Div. 790). As this is not an essential service (*Slutsky* v. *Cohen*, 35 Misc 2d 752) the other factors which the Administrator urges are of no significance.

Even if the Administrator enjoyed such powers as the nature of her objections would imply, her action in this instance would nevertheless be arbitrary. On October 24, 1963, respondent issued "Interpretation No. 7." This interpretation states the policy of the Administrator in a similar situation. It appears that tenants in certain buildings were supplied with electricity by outside contractors. In 1944, due to war-time restrictions on materials and the like, these contractors found it impossible to continue in business. In this situation the landlords were permitted to make the same arrangements with regard to electricity and to receive the same increments of rent as were the landlords in the 1952 incident. As to these landlords, the Administrator decided, according to the interpretation referred to, that they could discontinue the supply of electricity on the same conditions of rewiring and reducing the rentals as the peti-

tioner has consented to. In this connection the Administrator took occasion to call attention to the fact of the great increase in the number and kind of electrical appliances in use today as compared with a few years ago. Actually, at the present time the unusual increase in current consumed is due to the increasing prevalence of airconditioning and the universality of television, both of which have become significant factors only since 1952. So that what is unfair to the one set of landlords is equally unfair to the other. Respondent attempts to distinguish between the two groups on the ground that the landlords who made a change-over in 1952 had an option. Those involved in the 1944 operation had the same option, though it arose from the circumstances rather than as a matter of official administration. They could have failed to take any action and have left the tenants to make their own arrangements. There being no substantial difference between the two sets of landlords, permission to one and not to the other creates an arbitrary distinction.

The order should be reversed and the matter remanded to the City Administrator for processing in accord with the conditions set out in **Administrator's Interpretation No. 7.**

Valente, J. P., Eager and Staley, JJ., concur in Memorandum; Steuer, J., dissents in opinion in which Stevens, J., concurs.

Order and judgment affirmed, etc.